UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

U.S. ORDNANCE, Inc.                )
                                   )
                                   )
        v.                         ) Case No. 1:05CV02304 (ESH)
                                   )
                                   )
U.S. DEPT. OF STATE, et al.        )
_____     )

## MOTION FOR PRELIMINARY INJUNCTION

   Plaintiff, U.S. Ordnance, Inc. moves this honorable court for a preliminary injunction directing defendants to promptly process his pending applications to export defense articles.

## BACKGROUND

   1. U.S. Ordnance, Inc. was incorporated on July 28, 1997, under the laws of the State of Nevada.. The incorporating Nevada attorney occupied the office of director and all other

1

officer positions within the corporation until September 10, 1997, when Curtis Lee Debord[1] (Debord Junior) was elected to all officer positions pursuant to Nevada law. There has been no change in the corporate structure of U.S. Ordnance since.

    2. Debord Junior's father, Curtis Lynn Debord (hereafter Debord Senior.) had no involvement in the formation of U.S. Ordnance and never held a position which required the company to declare him a "responsible person" for purposes of the Federal firearms laws.

    3. Under the leadership of Debord Junior, U.S. Ordnance was successful; demand for its products grew rapidly; and a cooperative spirit, built on a firm commitment to voluntary compliance, developed between the small business and the multiple agencies regulating it, particularly with the Departments of State and Defense. The applications of U.S. Ordnance for export licenses and other requests requiring approvals for the small business were given fair, equal, efficient and friendly treatment. Pursuant to a licensing agreement with SACO Defense, U.S. Ordnance became the exclusive manufacturer and sole distributor for all models of the M60 machine gun and spare parts. The same agreement also established U.S. Ordnance as the sole source of M60 machine guns for the U.S. Government in support of Foreign Military Sales Program (FMS) and other military assistance programs. U.S. Ordnance at the same time mounted an aggressive marketing strategy, targeting military units of allied, non FMS participating nations. The response and corresponding demand for its products was unprecedented and was accomplished without compromise to the integrity of the products.

    4. Sales to non FMS and other military assistance programs must comply with the Arms Export Control Act (AECA) (the "Act") (22 U.S.C. §2778) and the International Traffic in Arms Regulations (ITAR) (the "Regulations") (22 C.F.R. Parts 120-130). The defendants through their agency the Directorate of Defense Trade Controls (DDTC) in this action are charged with implementation and enforcement of the "Act."

---

[1]Curtis Lee Debord is the son of Curtis Lynn Debord. Solely for purposes of clarity in this motion Curtis Lee Debord will hereinafter be referred to as Debord Junior. Curtis Lynn Debord will hereinafter be referred to as Debord Senior.

2

5. Totally separate and apart from Debord Junior or his firm, U.S. Ordnance, on August 12, 1997, a San Francisco Grand Jury returned a one count indictment against Debord Senior in CR 97-0239. The indictment alleged a single count conspiracy to violate provisions of the AECA, 22 U.S.C. 2778. To say that the indictment had a strange and unusual history is an understatement. Debord Senior awaited trial for almost eight years while the government delayed prosecution. During that time, the prosecution superseded the indictment twice, in 1998 and in 2001. The first superseding indictment added thirteen (13) substantive counts to the original conspiracy charge. The second superseding grand jury omitted one of the substantive counts which had been added in 1998. Next, in 2002, the judge granted the government's motion, dismissing seven (7) more of the substantive charges which had been added in 1998, on grounds of insufficient evidence. Finally, in June 2005, all remaining charges against Debord Senior were dismissed with prejudice by the Honorable Fern Smith, United States District Judge.

6. During the extremely protracted duration of the indictment, Debord Senior was under the strict scrutiny of the Court. He was not incarcerated for any period, but the conditions of his pre-trial release set by the Court called for him to be under the direct supervision of a United States District Judge. Debord Senior attended all court appearances; he complied with all travel restrictions and with all conditions relating to residency, employment, associations, and family activities among other conditions set by the Court. Debord Senior's activities were monitored at all times by the Federal Pre-Trial Services of the U.S. Probation Offices in San Francisco and in Reno, Nevada, and he compiled an unblemished record of cooperation and compliance.

7. The most significant event for purposes of this motion is that Debord Senior accepted employment in sales advocacy[2] with U.S. Ordnance on July 30, 2000. His duties included those

---

[2] Although his official title was "Sales and Marketing Manager," Debord Senior had absolutely neither authority nor responsibility to do anything even remotely approaching the criteria established in ITAR §§ 120.25 and 126.13 FOR "empowered official" or "senior officer or official." Debord Senior had no authority to set policy or manage anyone or any function of his employer; he had no supervisory responsibilities over any U.S. Ordnance employees; he did

associated with sales advocacy (Debord Senior was not authorized to consummate sales) and demonstrations of U.S. Ordnance products to customers and prospective customers. The relationship created by his Nevada contract with the corporation was classic employee-employer arrangement and was stringently observed. The Employment Agreement was "at-will."

      8. For obvious reasons, the official policy of the Administrative Office of the United States Courts is to encourage full time employment of persons who are on pre-trial release pending trial. Prior to Debord Senior's acceptance of employment with U.S. Ordnance, he petitioned the Court for permission and made full disclosure to the Court of the nature of his employment. The terms of Debord Senior's job description were made known to all concerned Criminal Justice components, including the trial judge. In most criminal cases, a person awaiting trial must surrender his or her passport to the Court. That condition had been applied to Debord Senior and was in effect when he was considering employment with U.S. Ordnance. Debord Senior provided thorough details of the prospective employment to the Office of the United States Attorney, including the fact that the job would entail extensive foreign travel and would require the return of his passport. The U.S. Attorney approved. The Pre Trial Services Agency was informed and recommended approval. Upon oral motion of Debord Senior, the trial judge approved Debord Senior's acceptance of employment. On November 17, 2000, the trial judge signed an Order reflecting the modifications and changes to Debord Senior's pre-trial release.

      9. Since May 2004 the plaintiff has submitted numerous applications to the defendants for processing for the export of M60 machineguns and related parts.

---

not have authority to execute export or import control documents or inquire into any export or import document on behalf of U.S. Ordnance. He was not empowered to verify the legality of any transaction or the accuracy of information submitted; he had no independent authority to refuse to sign any license application or other request for approval; he had no authority to bind his employer for contract purposes; he had no power of attorney or signatory powers with any financial institution; he had no responsibility to execute State or Federal tax documents; and, he was never elected to or appointed to the office of Chief Executive Officer, President, Vice President, to the position of a Senior Official (e.g., Comptroller, Treasurer, General Counsel) or to the Board of Directors of the corporation.

10. Since on or about May 2004, the defendants have refused to either grant any application for export from the plaintiff. The actions of the defendants have effectively debarred the plaintiff from exporting defense articles.

11. The actions by the defendants are alleged to have occurred because the plaintiff is alleged to have violated the Arms Export Control Act and the International Traffic in Arms Regulations. However, at no time has the plaintiff violated the AECA or the ITAR.

12. As a result of the *defacto* debarment by the defendants the plaintiff has:

    a. Lost approximately $4,000,000.00 in revenue due to cancelled contracts, forfeited performance bonds, costs, etc. in Columbia, Thailand and the Sultanate of Oman

    b. Been deprived of the ability to participate in government procurement processes; since absent export applications, products cannot be demonstrated or otherwise evaluated by prospective customers.

    c. Lost potential revenue since the plaintiff cannot participate in trade shows or otherwise market his products.

13. Debarment under the AECA is governed by ITAR 22-§128. The plaintiff has been denied its right under the ITAR of notice and a hearing.

**ARGUMENT**

14. In considering whether to grant preliminary injunctive relief, the court must consider whether: (1) the party seeking the injunction has a substantial likelihood of success on the merits; (2) the party seeking the injunction will be irreparably injured if relief is withheld; (3) an injunction will not substantially harm other parties; and (4) an injunction would further the public interest. *CSX Transportation, Inc. v. Williams*, 406 F.3d 667, 670 (D.C. Cir. 2005). (*See also*) *Serono Labs., Inc. V. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998); *Washington Metro Area Transit Comm'n v. Holiday Tours, Inc.* 559 F.2d 841, 843 (D.C. Cir. 1977). "The test is a flexible one. 'If the arguments for one factor are particularly strong, an injunction may issue even

if the arguments in other areas are rather weak." *CSX Transportation, Inc.* 406 F.3d at 670 citing *Cityfed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995).

  15. Plaintiff clearly meets the "likelihood of success" criterion. The plaintiff has been submitting applications to the defendant for more than a year without any actions by the defendants. Similarly the plaintiff is suffering irreparable harm. He has lost and continues to lose revenues from overseas sales.

  16. Granting the plaintiff the preliminary relief he seeks would not substantially harm other interested parties. In fact there are no other interested parties.

  17. Finally, granting the requested relief would clearly further the public interest. The export licenses the plaintiff seeks are licenses to export defense articles to allies of the United States.

  WHEREFORE, for all of the forgoing reasons Plaintiff requests that the court issue a preliminary injunction directing the defendants to promptly process his export licenses.

December 2, 2005.

           _____/s/_____
           Joseph R. Conte, Bar #366827
           400 Seventh St., N.W., #400
           Washington, D.C. 20004
           202.638.4100

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that a copy of the foregoing was served by electronic case filing this 2nd day of December, 2005.

           _____/s/_____
           Joseph R. Conte