

**United States Department of State**

*Bureau of Political-Military Affairs*
*Directorate of Defense Trade Controls*

*Washington, D.C. 20520-0112*

**In Reply Refer To:**
**DTC Case Nos. RR 04-118**

OCT 2 6 2005

Mr. Curtis L. Debord, Jr.
President
U.S. Ordnance, Inc
2500 Valley Road Unit Z
Reno, Nevada 89512

Dear Mr. Debord:

It has come to our attention, that on June 28, 2005, the U.S. District Court for the North District of California dismissed the indictment charging your father, Curtis K. Debord, Sr., with, among other things, violations of the Arms Export Control Act (AECA). We also have been informed that the United States has filed a notice of appeal.

While Debord Sr. is not currently under indictment for an AECA offense and, thus, not ineligible under the International Traffic in Arms Regulations (ITAR) for that reason, the Department is hereby informing you of its determination to continue its policy to deny all applications for licenses or other approvals relating to exports of defense articles or defense services or brokering activities with respect to transfers of U.S. or foreign defense articles or services in which Debord Sr. is an applicant or otherwise directly or indirectly involved. This action has been taken pursuant to Section 38 of the AECA and Section 126.7(a) of the ITAR (including paragraphs 1, 2 and 6 of that Section) and is based on the evidence that Debord Sr., along with U.S. Ordnance (USO) and you, violated the AECA and ITAR as described in the draft Charging Letter we provided you, through your then attorney, Mark Barnes, on April 4, 2005. As a result of this policy, Debord Sr. will remain ineligible under the ITAR and may not use any exception from the requirement for a license or other approval for the export of defense articles or defense services or for brokering activities.

As you know, because of the activities described in the draft Charging letter, USO has been and remains under a policy of denial pursuant to Section 38 of the AECA and Section 126.7(a) of the ITAR (including paragraphs 1, 2 and 6 of that Section) and, as a result, is also generally ineligible under the ITAR. Thus, the Department will continue to deny all applications for licenses or other approvals relating to exports of defense articles or defense services or brokering activities with respect to transfers of U.S. or foreign defense articles or services in which USO is an applicant or otherwise directly or indirectly involved. USO may not use any exemption from the requirement for license or other approval for the export of defense articles or defense services or for brokering activities. Also, the suspension of USO's previously issued licenses remains in effect.

Please note that, under Section 127.1(c) of the ITAR, any person who knows that another person is ineligible under the ITAR may not -- without disclosure to and approval from the Directorate of Defense Trade Controls -- participate in any transaction that may involve a defense article or defense service for which a license is required where such ineligible person may obtain any benefit therefrom or have a direct or indirect interest therein.

Enclosed is a revised draft Charging Letter that updates the information concerning the indictment and also makes a few technical changes. It is our understanding that you wish to pursue discussions with a view to settling this matter jointly with Debord Sr. under a Consent Agreement (in which you would neither admit nor deny the allegations of the draft Charging Letter). If you wish to proceed with settlement discussions on the basis of the revised draft Charging Letter, please advise us directly or through your attorney.

If you have any questions, you may contact Patricia Slygh, Chief of the Enforcement Division, at (202) 663-2844 or Peter Sullivan of her division at (202) 663-2831.

Sincerely,

David C. Trimble
Director
Office of Defense Trade Controls Compliance

Enclosure: As noted

## DRAFT CHARGING LETTER

U.S. Department of State
Bureau of Political-Military Affairs
Directorate of Defense Trade Controls
Washington, D.C. 20520-0112

Mr. Curtis Lee Debord
President
U.S. Ordnance, Inc.
2500 Valley Rd. (Suite Z)
Reno, NV 89512

Mr. Curtis Lynn Debord
12301 Interstate 80 E
Sparks, NV 89434

Dear Messrs. Debord:

The Department of State ("Department") charges that Respondent, U.S.
Ordnance (hereinafter "USO"), Curtis Lee Debord (hereinafter "Debord Jr.")
and Curtis Lynn Debord (hereinafter "Debord Sr.") violated Section 38 of
the Arms Export Control Act (the "Act") (22 U.S.C. 2778) and the
International Traffic in Arms Regulations (the "Regulations") (22 CFR Parts
120-130) as described below. At this time, thirty-five (35) violations are
charged against USO, Debord Jr. and Debord Sr. The Department reserves
the right to amend this charging letter, which may include specifying
additional violations (see Section 128.3 of the Regulations).

## PART I - RELEVANT FACTS

(1) USO is a corporation that was incorporated in July 28, 1997 under the laws of Nevada to take over the business of manufacturing commercial collector-grade firearms of American Arms/Delta, a company owned by Debord Jr. USO is U.S. person within the meaning of Section 120.15 of the Regulations.

(2) Debord Jr. is the President, Treasurer, Secretary and sole director and owner of USO. Debord Jr. is a U.S. person within the meaning of Section 120.15 of the Regulations.

(3) Debord Sr. is the father of Debord Jr. and, during the period relevant to the charges, was associated with USO as described more fully below. Debord Jr. is a U.S. person within the meaning of Section 120.15 of the Regulations.

(4) On August 12, 1997, the Grand Jury for the U.S. District Court, North District of California, returned an indictment charging that Debord Sr., among other things, conspired to import firearms and firearms parts in violation of the Arms Export Control Act. This charge was included in superseding indictments returned by the Grand Jury for that Court on November 17, 1998 and November 29, 2001.

(5) On June 28, 2005, the U.S. District Court dismissed the indictment, and the United States has submitted a notice of appeal of this action. While under indictment, Debord Sr. was an ineligible person under the ITAR. By letter of _____ , 2005, the Director of the Office of Defense Trade Controls Compliance notified Debord Sr. that, pursuant to Section 126.1(a) of the ITAR he would remain subject to a policy of denial and, thus, generally ineligible under the ITAR.

(6) USO is engaged in the business of manufacturing and exporting defense articles (including machine guns covered by Category I(b) of the U.S. Munitions List) and furnishing defense services and, since February 2000, has been registered with the Department of State, Directorate of Defense Trade Controls (DDTC)[1] pursuant with Section 38 of the Act and Section 122.1 of the Regulations.

_____

(7)  USO, Debord Jr. and Debord Sr. are U.S. persons within the meaning of Section 120.15 of the ITAR and, as such, are subject to the jurisdiction of the United States, in particular with regard to the Act and the Regulations.

(8)  On or about July 30, 2000, Debord Sr. became a senior officer or official of USO, specifically Sales and Marketing Manager, and served in that position until on or about June 1, 2004.  As part of his duties, Debord Sr. traveled to Columbia and other foreign countries to promote exports of USO-manufactured machine guns.

(9)  Under his employment contract with USO, Debord Sr. was entitled to a salary of $1,000 per week and bonus of 5% of gross domestic and foreign sales in each year sales exceed $1,000,000.  In December 2003, USO paid Debord $1,048,000 of the $1,080,194 total amount USO then owed to him for salary and bonuses earned during the four years, 2000-2003.  The vast majority of bonuses was derived from exports of defense articles, mostly machine guns and related parts sold to Columbia, including those exports referred to in paragraph 12.

(10)  The transmittal letter, signed by Debord Jr., which accompanied USO's February 2000 registration statement with the DDTC, represented, among other things, that no senior officer or official of USO had ever been indicted for violating the Act.  Following the hiring of Debord Sr. in July 2000, USO and Debord Jr., failed to notify the DDTC that Debord Sr., who was subject to indictment for violating the AECA, was serving as a senior officer or official.

(11)  Transmittal letters, signed by Debord Jr., which accompanied renewals of USO's registration statement with the DDTC in February 2002 and January 2004, signed by Debord Jr., stated, among other things, that no senior officer or official had ever been indicted for violating the Act.

(12)  At various times in the period from July 27, 2000 through June 1, 2004, USO applied to the DDTC for at least 16 licenses or other approvals to export defense articles valued at over $18.4 million.  Of these applications, 13 valued at over $14.7 million were approved, 11 of which were for exports valued at about $14.5 million to Columbia.  The applications, signed by

---

[1] In early 2003, the former Office of Defense Trade Controls was realigned and renamed the Directorate of Defense Trade Controls.  References to the Directorate of Defense Trade Controls will deemed to be to Office of Defense Trade Controls wherever applicable.

4

Debord Jr., stated that no senior officer or official of USO was subject to indictment for violating the AECA.

(13)  During the period July 27, 2000 through June 1, 2004, USO, Debord Jr. and Debord Sr., knew that Debord Sr. was under indictment for violating the Act and would and did benefit from and had a direct or indirect interest in exports for which USO request and obtained licenses or other approvals to export defense articles.  At no time did USO, Debord Jr. or Debord Sr. disclose these facts in writing to, or obtain written authorization to participate in such exports from, DDTC.  Such exports include, but are not limited to, those referred to in paragraph (9) above.

(14)  The facts relating to the association of Debord Sr. with USO were not voluntarily disclosed to the DDTC.  After learning of these facts, the DDTC initiated an investigation and, on June 2, 2004, imposed a policy of denial on USO's applications for licenses or other approvals to export defense articles or services and, on June 24, 2004, suspended USO's outstanding export licenses.

## PART II - REGULATORY REQUIREMENTS

The following provisions of the Regulations adopted pursuant to Section 38 of the Act are relevant to the charges:

(15)  Section 38 of the Act requires persons engaged in the business of manufacturing defense articles or exporting defense articles and defense services to register in accordance with the Regulations; and prohibits the export of defense articles or defense services except in accordance with the Regulations

(16)  Section 120.1(c) of the Regulations provides that a person who is subject to indictment for violating the Act (or other statutes listed in Section 120.27 of the Regulations) is generally ineligible.

(17)  Part 122 of the Regulations requires the registrant to state whether any of its senior officers or officials has ever been indicted for violating the Act (or any other statutes listed in the Act); disclosure of such indictment is required to be included in a transmittal letter accompanying the registration

signed by an authorized senior officer (Section 122.2) or in a notification within 5 days of such indictment (Section 122.4).

(18)  Section 126.13 of the Regulations requires that an application for an export license include a letter be signed by a responsible official empowered by the applicant stating whether any senior official is the subject of an indictment for violating the Act (or any other statutes listed in Section 120.7 of the Regulations).

(19)  Section 127.1(a)(4) of the Regulations makes it unlawful to violate any terms or conditions of a license granted pursuant to the Regulations, including the conditions set forth in Section 126.13.

(20)  Section 127.1(c) of the Regulations provides that a person with knowledge that another person is subject to indictment for violating the AECA (or is otherwise ineligible pursuant to Section 120.1(c) of the Regulations) may not, directly or indirectly, without prior disclosure of the facts to, and written authorization from, DDTC, participate in any transactions which may involve any defense article for which a license is required by the Regulations where such indicted (or otherwise ineligible person) may obtain any benefit therefrom or have any direct or indirect interest therein.

(21)  Section 127.1(d) of the Regulations provides that no person may willfully cause, or aid, abet, counsel, demand, induce or permit the commission of any act prohibited by or the omission of any act required by Section 38 or any regulation, license, approval or order issued thereunder.

(22)  Section 127.2 of the Regulations provides that it is unlawful to use any export control document containing a false statement or misrepresenting or omitting a material fact for the purpose of exporting any defense article or technical data or the furnishing of any defense service for which is license or approval is required.

## PART III - THE CHARGES

As described more fully in paragraphs 1 through 22, the following violations are charged to Respondents USO, Debord Jr. and Debord Sr.:

6

### Charges 1-3:  False Statements and Omissions of Material Facts Relating to Registration

(23)  Respondents USO, Debord Jr. and Debord Sr., acting alone and in concert and aiding and abetting each other, violated Section 38 of the Act and Section 127.2 and 127.1(d) of the Regulations, in three separate instances, by (A) failing to notify DDTC, as required by Section 122.4 of the Regulations, that USO had appointed Debord Sr. to serve as a senior officer or official of USO and that he was subject to indictment for violating the Act, and (B) by falsely stating in two letters required by Section 122.2 to accompany renewals of USO's Registration Statement that no senior officer or official of USO is subject to indictment for violating the Act.

### Charges 4-19:  False Statements Relating to Export License Applications

(24)  Respondents USO, Debord Jr. and Debord Sr., acting alone and in concert and aiding and abetting each other, violated Section 38 of the Act and Section 127.2 and 121.1(d) of the Regulations by falsely stating in 16 separate letters, required by Section 126.13 of the Regulations to accompany applications for export licenses, that no senior officer or official of USO is subject to indictment for violating the Act.

### Charges 20-35: Failure to Disclose and Obtain Approval of Participation in Exports in which an Ineligible Person May Benefit or Have an Interest

(25)  Respondents USO, Debord Jr. and Debord Sr., acting alone and in concert and aiding and abetting each other and knowing that Debord Sr. was indicted for violating the Act and would and did benefit from and had a direct or indirect interest in exports for which USO requested and obtained licenses to export defense articles, violated Section 38 of the Act and Sections 127.1(c) and 127.1(d) of the Regulations, in 16 separate instances, by failing to disclose these facts in writing to, or obtain written authorizations to participate in such exports from, DDTC.  Such exports include, but are not limited to, those described in paragraph 12 above.

## PART III - ADMINISTRATIVE PROCEEDINGS

(26)  Pursuant to Part 128 of the Regulations, administrative proceedings are instituted against Respondents USO, Debord Jr. and Debord Sr. for the purpose of obtaining an Order imposing civil administrative sanctions that may include the imposition of debarment and/or civil penalties.  The Assistant Secretary for Political-Military Affairs shall determine the appropriate period of debarment, which shall generally be for a period of three years in accordance with Section 127.7 of the Regulations, but in any event will continue until an application for reinstatement is submitted and approved.  Civil penalties, not to exceed $500,000 per violation, may be imposed in accordance with Section 38(e) of the Act and Section 127.10 of the Regulations.

(27)  A Respondent has certain rights in such proceedings as described in Part 128 of the Regulations.  Currently, this is a draft-charging letter; however, in the event you are served with a charging letter you are advised of the following matters.  You are required to answer the charging letter within 30 days after service.  A failure to answer will be taken as an admission of the truth of the charges.  You are entitled to an oral hearing if a written demand for one is filed with the answer or within seven (7) days after service of the answer.  The answer, written demand for oral hearing (if any) and supporting evidence required by Section 128.5(b) shall be in the duplicate and mailed or delivered to ALJ Docketing Center, U.S. Coast Guard, 40 South Gay Street, Room 412, Baltimore, MD 21202-4022.  A copy shall be simultaneously mailed to the Director of the Office of Defense Trade Controls Compliance, 2401 E. Street, N.W., Washington, DC  20037.  If you do not demand an oral hearing, you must transmit within seven (7) days after the service of you answer, the original or photocopies of all correspondence, papers, records, affidavits, and other documentary or written evidence having any bearing upon or connection with the matters in issue.  Please be advised also that charging letters may be amended from time to time, upon reasonable notice.  Furthermore, cases may be settled through consent agreement, including after service of a charging letter.

8

(28)  Be advised that the U.S. Government is free to pursue civil, administrative, and/or criminal enforcement for violations of the Act and the Regulations.  The Department of State's decision to pursue one type of enforcement action does not preclude it or any other department or agency of the United States from pursuing another type of enforcement action.

Sincerely,


David C. Trimble
Director
Office of Defense Trade Controls Compliance