

**United States Department of State**

*Bureau of Political-Military Affairs*
*Directorate of Defense Trade Controls*

*Washington, D.C. 20520-0112*

DEC 2 1 2005

**In reply refer to**
**DTC Case Nos. 04-118 and TE 06-005**

Mr. Curtis Lee Debord
President
U.S. Ordnance, Inc.
2500 Valley Rd. (Suite Z)
Reno, NV 89512

Dear Mr. Debord:

On October 26, 2005, we issued a revised draft proposed charging letter and invited USO, you and your father, Curtis Lynn Debord (Debord Senior) to settle this matter by Consent Agreement as provided under section 128.11(b) of the International Traffic in Arms Regulations (ITAR). That letter revised an earlier draft proposed charging letter issued on April 4, 2005, which also invited USO to pursue settlement via a Consent Agreement (as noted below, little progress was made in our discussions of that draft). To date, we have not received USO's response to the October 26 proposed charging letter.

Resolving the current policy of denial and USO's pending export license applications (which, as discussed below, have not yet been supported by the necessary transaction exception documentation) depends on the outcome of the section 128.11(b) settlement proceedings. This letter therefore serves to: (1) confirm the status of proceedings to date and request a response to our revised draft proposed charging letter on or before January 15, 2006; and (2) provide notice to USO that failure to timely respond to the proposed charging letter will be construed as USO's indication that it does not wish to reach an administrative settlement, in which case, the formal procedures of Part 128 of the ITAR may be invoked.

-2-

By way of background, in May 2004, we learned that your father, Curtis Lynn Debord (Debord Senior), was associated with your company while he was under indictment for having violated, among other things, Section 38 of the Arms Export Control Act (AECA), and, thus, was generally ineligible under ITAR Section 120.1(c). By letter dated June 2, 2004, my office advised that, pending receipt and evaluation of additional information concerning Debord Senior's activities, USO's applications for licenses would be processed only as transaction exceptions that must be supported by a request or submission meeting strict national security, policy and law enforcement criteria. This letter, in effect, imposed a policy of denial under the ITAR.

USO submitted additional information in June 2004 that showed, among other things, that USO had submitted applications that may have failed to disclose (as required by ITAR Sections 126.13(a) and 127.1(c)) that an ineligible person (i.e., Debord Senior) served as a senior official of USO, had a direct or indirect interest in the transactions, and obtained benefit therefrom. In my letter of June 24, 2004, I informed you that for this and other reasons, we were suspending USO's previously issued licenses and that these as well as any future applications would be considered only under the transaction exception procedure.

These actions -- imposing a policy of denial, suspension, and subjecting USO to the transaction exceptions procedure -- were taken pursuant to Section 126.7(a) of the ITAR.

As our letters made clear, USO could still obtain export licenses while the policy of denial remained in effect if, on a case-by-case basis, USO submitted information that meets the standard for exceptions to this policy (known as "transaction exceptions"). Transaction exception requests must meet strict criteria as set forth in the June 2, 2004 letter, including whether an exception would (1) be warranted by overriding U.S. foreign policy or national security interests, (2) further law enforcement concerns that are consistent with such interests, or (3) be justified by some other compelling interests that are consistent with U.S. foreign policy, national security and law enforcement concerns. A transaction exception must be approved by the Assistant Secretary of State for Political-Military Affairs (PM).

-3-

In October 2004, pursuant to Section 126.7(a), the Assistant Secretary of State for (PM) denied USO's transaction exception requests submitted in June 2004 for three export license applications. As to applications submitted early this year, my office informed the office of your former counsel, Mark Barnes, that USO's transaction exception applications also lacked adequate justification and would not be processed unless supplemented by adequate documentation that addressed the strict criteria referenced in our June 2004 letter. In August 2005, USO submitted additional applications for export licenses as transaction exceptions. USO's transmittal letters requested that the applications not be returned without action pending resolution of the draft proposed Charging Letter. Pursuant to USO's request, we have held these applications, but note that these more recent requests for transaction exceptions are deficient for the same reasons as the earlier requests: failure to address and meet the criteria set forth in the June 2, 2004 letter. With regard to all pending transaction exception applications, we received neither the additional documentation requested, nor a request for further clarification — these applications therefore remain deficient.

Since establishing the policy of denial in June 2004, we have requested specific information to evaluate the extent to which USO may have violated any of the applicable export regulations and, if so, determine an appropriate resolution. This information was also relevant to our consideration of applications for transaction exceptions.

In late March, 2005, USO completed submission of all of the information we had requested in DTC Case No. 04-118 concerning violations arising from Debord Senior's association with USO. Shortly thereafter, on April 4, 2005, we issued our first draft proposed charging letter. Little progress was made toward settling this matter for a number of reasons, including USO's concerns about possible criminal prosecution; referral of the USO case to the Department of Justice to assess whether it wished to prosecute; appointment by USO and Debord Senior of their new co-counsel, Robert Sanders and Joseph Conte, to replace Mark Barnes (former counsel to USO and you) and Bob Barr (former counsel to Debord Senior); and USO's petition to lift the policy of denial and have me removed from this matter, which the Assistant Secretary for PM denied on October 18, 2005).

-4-

As a further attempt to facilitate resolution of this matter, I sent letters on October 26, 2005, to you and Debord Senior, transmitting a revised draft proposed Charging Letter. My office also faxed copies to your current co-counsel, Robert Sanders, on November 28, 2005. Thus far, we have received no response to these letters.

Nevertheless, to the extent USO is amenable, we remain committed to resolving this matter via the consent agreement procedure under the ITAR. We encourage USO's, your and Debord Senior's participation in settlement discussions and, to that end, would like to arrange a meeting. However, if we do not hear from you on or before January 15, 2006, we will assume that you do not wish to pursue settlement discussions.

As indicated in my letter of October 26, 2005, USO will remain under a policy of denial, which, as you are aware, is distinct from either statutory or administrative debarment. With one exception, we will continue to hold USO's license applications, again as you have requested, pending resolution of the administrative enforcement case. The exception is an application, dated January 12, 2005, for a temporary license for an export for use at a trade show in the United Arab Emirates that occurred in February 2005; it is returned herewith. A list of applications on hold is enclosed for reference. If you would like us to process your transaction exception applications, please provide the required information that addresses the criteria set forth in our June 2, 2004 letter. If you have any questions, please contact Patricia Slygh, Chief of the Enforcement Division in my office, at (202) 663-2844. may be reached at (202) 663-2807.

Sincerely,

David C. Trimble
Director
Office of Defense Trade Controls Compliance

Enclosures: As noted

cc: Paul Mussenden, Assistant U.S. Attorney

## U.S. Ordnance, Inc. Export License Applications on Hold

DSP-73 No. 106310 (filed 3/21/05)   -- Czech Republic

DSP-5 No. 960640 (filed 4/5/05)   -- Italy

DSP-5 No. 960641  (filed 4/5/05)   -- Jordan

DSP-5 No. 973235  (filed 8/10/05) -- Saudi Arabia

DSP-5 No. 973236  (filed 8/9/05)   -- Thailand

DSP-5 No. 973237  (filed 8/9/05)   -- Thailand

DSP-5 No. 975544  (filed 8/31/05)   -- Thailand

DSP-5 No. 975548  (filed 8/31/05)  -- Philippines

DSP-73 No. 107757  (filed 8/31/05)  -- Malaysia