## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| U.S. ORDNANCE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-2304 (ESH) |
| | ) | |
| U.S. DEPARTMENT OF STATE, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### <u>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS</u>

Defendants' motion to dismiss explained in detail why this Court lacks jurisdiction to hear plaintiff's claims, i.e., because there is no jurisdiction under the APA to review an action committed to the discretion of an Agency by law and because plaintiff is seeking to use this action to preempt and avoid an administrative action by the Department of State for plaintiff's willful violations of the Arms Export Control Act and the International Traffic in Arms Regulations. Plaintiff's opposition confirms these reasons. Specifically, plaintiff argues at length about the employment of Curtis Lynn Debord ("Debord Sr.") at US Ordnance. The fundamental problem with plaintiff's argument, however, is that the proper jurisdiction for the argument is in defense to the forthcoming administrative case against plaintiff by the Department of State, ***not*** in this Court.

To the extent plaintiff seeks to allege some sort of Due Process claim, that claim fails – plaintiff has no Constitutional right to sell defense articles to foreign countries. Moreover, to the extent plaintiff is entitled to due process prior to debarment, it is entitled to receive, and will receive, due process in the Department of State's administrative case against plaintiff. Plaintiff is entitled to ***no*** due process in the approval or denial of its license applications, as the Congress

has committed the decision to approve or deny export licenses to the discretion of the President and the Department of State.

## I.    PLAINTIFF'S DUE PROCESS CLAIM FAILS AS A MATTER OF LAW

Plaintiff opens its opposition by asserting that "the core of the complaint is the deprivation of plaintiff's Due Process rights guaranteed by the Fifth Amendment."  Opp. at 1. Plaintiff's claim is quite surprising given that the Fifth Amendment is referenced only a *single time* in the complaint, under the "Jurisdiction and Venue" heading, and *not mentioned* at all in plaintiff's motion for a preliminary injunction.  Regardless of whether or not plaintiff intended to state a Due Process claim, however, that claim fails as a matter of law.

Presumably, plaintiff seeks to allege that the denial of its export licenses and the cancellation of all pending licenses was something for which it should have received some sort of Due Process rights.  As explained by the United States Supreme Court in Board of Regents of State Colleges v. Roth, 408 U.S. 564 (1972), "[p]roperty interests . . . are not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source." Id. at 577.  In this case, plaintiff points to *nothing* that provides it a property right in exporting defense articles, nor can it.  In fact, courts consistently hold that the right to foreign commerce does *not* rise to the level of a property interest.  See, e.g., Board of Trustees of University of Illinois v. United States, 289 U.S. 48, 57 (1933) ("The Congress may determine what articles may be imported into this country and the terms upon which importation is permitted."); The Vessel Abby Dodge v. United States, 223 U.S. 166, 176-77 (1912) ("[N]o one can be said to have a vested right to carry on foreign commerce with the United States."); B-West Imports, Inc. v. United States, 75 F.3d 633 (Fed.

Cir. 1996) (government may prevent import of firearms under AECA without being subject to a Due Process claim); <u>Ganadera Indus., S.A. v. Block</u>, 727 F.2d 1156, 1160 (D.C. Cir.1984) ("[Ganadera's] due process argument must fail because [Ganadera] has no constitutionally-protected right to import into the United States."); <u>Continental Seafoods, Inc. v. Schweiker</u>, 674 F.2d 38, 42 n.11 (D.C. Cir.1982) ("Courts must defer to the expertise of the agency charged with exercising Congress' broad power to bar articles from import.").[1]

The precise Due Process claim proffered by plaintiff was expressly considered and ***rejected*** outright by the Court of Appeals for the Federal Circuit in <u>B-West Imports, Inc. v. United States</u>, 75 F.3d 633 (Fed. Cir. 1996). In <u>B-West</u>, as here, plaintiff complained that the cancellation of its license to sell certain munitions required the company to receive due process. The Federal Circuit rejected such a claim, holding that "the appellant's rights to import and sell Chinese arms in the United States was subject at all times to the hazard that their permits would be revoked, pursuant to statute and regulation, on foreign policy grounds or for other grounds." <u>Id.</u> at 638. Moreover, the Court held, the Due Process Clause does not require the government to stand as a surety against the adverse consequences sometimes suffered by persons who knowingly undertake that kind of commercial risk." <u>Id.</u> at 638-39. The same provisions of the AECA analyzed in <u>B-West</u> are at issue here.[2]

---

[1]  <u>See</u> <u>also</u> <u>Buttfield v. Stranahan</u>, 192 U.S. 470, 493 (1904) (statute which restrains the introduction of particular goods into the United States does not violate the due process clause of the Constitution because there is no vested right to trade with foreign nations); <u>Arjay Assocs., Inc. v. Bush</u>, 891 F.2d 894, 896 (Fed. Cir. 1989) ("It is beyond cavil that no one has a constitutional right to conduct foreign commerce in products excluded by Congress.").

[2]  The only difference between the two cases is that <u>B-West</u> dealt with imports, whereas this case deals with exports. Both imports and exports, however, are controlled by the AECA. Moreover, because the courts speak in terms of parties having no property right "to carry on

In the AECA, Congress "authorize[d] sales [of defense articles] by the United States Government to friendly countries having sufficient wealth to maintain and equip their own military forces at adequate strength . . .." 22 U.S.C. § 2751. Congress further stated that, "[i]t is the sense of the Congress that all such sales be approved ***only*** when they are consistent with the ***foreign policy interests*** of the United States." Id. (emphasis added). Thus, under the AECA, Congress authorized the President to "control" the export and import of defense articles and defense services "[i]n furtherance of world peace and the security and foreign policy of the United States." See 22 U.S.C. § 2778(a)(1). Additionally, Congress specifically authorized the Secretary of State to "revoke[], suspend[], or amend[]" an export license "***without prior notice, whenever the Secretary deems such action to be advisable***." See 22 U.S.C. § 2791(e)(2)(A). This broad discretion is reflected in the AECA's implementing regulations. See 22 C.F.R. § 126.7(a). Thus, plaintiff is entitled to no due process prior to having a license denied, revoked, suspended or amended.

Notwithstanding that defendants' motion to dismiss discussed B-West, and explained why it foreclosed plaintiff's Fifth Amendment claim, plaintiff simply ignores the case. In fact, plaintiff's opposition neither distinguishes the case nor explains why it does not control plaintiff's Fifth Amendment claim. Given that the case is directly on point, and expressly rejects the sort of claim that plaintiff is seeking to make, plaintiff's silence is deafening for obvious reasons.

---

foreign commerce with the United States," it is logical to conclude that the lack of a property right extends to both importing and exporting. See, e.g., The Vessel Abby Dodge, 223 U.S. at 176-77.

Instead of explaining why B-West is not dispositive of its claims, plaintiff simply points the Court to Kartseva v. Department of State, 37 F.3d 1524 (D.C. Cir. 1994). Unfortunately for plaintiff, Kartseva does not save its deficient Fifth Amendment claim for several reasons. First, Kartseva was a case relating to employment, *not* the export of defense articles. Second, and more importantly, to the extent that there was an action in Kartseva that required due process, plaintiff has not reached that point. Unless and until there is a decision in the forthcoming administrative action against plaintiff by the Department of State that debars plaintiff pursuant to the ITAR, plaintiff has *not* been subject to a change in legal status that entitles it to due process. The imposition of a policy of denial against parties who have violated the AECA and ITAR and are pending investigation, or are being considered for administrative action, is a discretionary function consistent with the State Department's authority under Section 126.7 of the ITAR to disapprove "any license or approval . . . whenever . . . the Department of State deems such action to be in the furtherance of world peace, the national security or the foreign policy of the United States, or is *otherwise advisable*." To continue to issue licenses to parties that have violated the ITAR and the AECA pending the administrative resolution of those violations is unreasonable.[3] Thus, any due process challenge to a debarment is premature and not ripe – plaintiff has not been debarred under the ITAR.

Finally, plaintiff attempts to conflate license denial decisions and policies with the imposition of a debarment, mischaracterizing the former as "de facto debarment." A decision to

---

[3] As shown in the motion to dismiss, the delay in plaintiff receiving a decision on its pending licenses was multifaceted, including plaintiff indicating to the State Department its interest in settling the charges set forth in the draft charging letter and then ultimately withdrawing that interest.

deny an export license is ***not*** an enforcement action, but rather the exercise of the broad

discretion vested with the Department.  <u>See</u> 22 C.F.R. § 126.7(a).  Debarment and the imposition

of civil penalties are enforcement actions that, if invoked, are subject to the procedures of Part

128 of the ITAR.  Additionally, the decision whether to institute such enforcement action is also

within the discretion of the State Department.  There is also a major difference between the

policy of denial and a debarment, one which plaintiff conveniently chooses to ignore.  Under the

policy of denial, plaintiff may still submit applications for the export of defense articles for

consideration, with the possibility of the approval of those applications if plaintiff can justify the

transaction exception.[4]  In contrast, however, a debarment is an outright prohibition on a party

participating directly or indirectly in the export of defense articles.  <u>See</u> 22 C.F.R. § 127.7.

## II.    PLAINTIFF'S REQUEST TO HAVE ITS LICENSE APPLICATIONS PROCESSED IS MOOT

In its complaint, plaintiff requested that the Court order the State Department to

"process" its license applications.  Compl. at p.6 (requesting "an Order directing employees of

the Defense Trade Controls to process all transaction applications received from U.S. Ordnance

subsequent to June 2004"); Pl.'s Motion for Preliminary Injunction at p.6 ("WHEREFORE, for

all of the foregoing reasons Plaintiff requests that the court issue a preliminary injunction

directing the defendants to promptly process his export licenses.").  On March 10, 2006, the

State Department advised plaintiff that it had "processed" its export applications and denied such

---

[4]  Although the term "transaction exception" may not be found in the AECA or the ITAR, the policy arises from, and is authorized by, 22 U.S.C. § 2778, which authorizes the President, or his delegate, to exercise the discretion to issue an export license despite the recipient of the license being generally ineligible.  Notably, 22 U.S.C. § 2778 imposes a higher standard for a generally ineligible person to receive a license.

applications.  Now that plaintiff's applications have been "processed," its request for an Order

mandating that the applications be processed is now moot and the claims must be dismissed.

To the extent that plaintiff is unhappy with the decision of the State Department to deny

the license applications, and requests that the Court order the State Department to grant such

licenses, this Court lacks jurisdiction to provide such relief.  As explained in detail in

defendants' motion to dismiss, and discussed below, the issuance of a license to export defense

articles is committed to the discretion of the agency by law.  Therefore, plaintiff is **not** entitled to

a specific decision on its license applications and this Court has no jurisdiction to order the

Department of State to issue such a license to plaintiff.[5]

## III.    THIS COURT HAS NO JURISDICTION TO REVIEW THE STATE DEPARTMENT'S DENIAL OF PLAINTIFF'S LICENSE APPLICATIONS

In opposition to defendants' motion, plaintiff asserts that the Court has jurisdiction to

"review agency action which is unlawfully or unreasonably delayed, abuse of their discretion

and not in accordance with law."[6]  Opp. at p.10.  In support of this claim, plaintiff cites section

706 of the Administrative Procedures Act, 5 U.S.C. § 706.  Although plaintiff's statement of law

---

[5]  Notably, plaintiff's opposition does not stand by the claim made in the complaint that the issuance of a license to export defense articles is a "ministerial duty of a nondiscretionary nature."  See Compl. at ¶ 2.  The actual language of the AECA and the ITAR certainly establish that the issuance of export licenses is a discretionary function.

[6]  In section II of its opposition, plaintiff spends a great deal of space discussing the merits of the draft charging letter against US Ordnance.  Unfortunately for plaintiff, it is pleading its factual case in the wrong forum.  The proper forum for plaintiff to dispute the merits of the draft charging letter, and the forthcoming formal charging letter, is in the forthcoming administrative proceeding at the State Department, not in this Court.  FTC v. Standard Oil Co., 449 U.S. 232, 246-47 (1980) ("Because the Commission's issuance of a complaint averring reason to believe that Socal has violated the Act is not 'final agency action' under § 10© of the APA, it is not judicially reviewable before administrative adjudication concludes.")

7

is correct, i.e., that a Court often **may** review agency action that is unreasonably delayed, an abuse or discretion, or not in accordance with law, plaintiff's application of the statement to this case is misplaced.  Specifically, in citing section 706 of the APA, plaintiff **ignores** section 701, 5 U.S.C. § 701, which **precludes review** in this matter.  Pursuant to section 701 of the APA, a Court may review agency action "**except** to the extent that . . . (2) agency action is committed to agency discretion by law."  5 U.S.C. 701(a) (emphasis added).

As explained in detail in defendant's motion to dismiss, Congress authorized the President to "control" the export and import of defense articles and defense services "[i]n furtherance of world peace and the security and foreign policy of the United States."  See 22 U.S.C. § 2778(a)(1).  Congress itself made clear that the decision was committed to the discretion of the President and his delegate by law:  "It is the sense of the Congress that all such sales be approved **only** when they are **consistent with the foreign policy interests** of the United States."  22 U.S.C. § 2751 (emphasis added).  Similarly, the AECA further authorizes the President to exercise his **discretion** in denying a license to export defense articles if the President determines that an applicant for a license is the subject of an indictment for the violations of certain specified statutes, if there is "reasonable cause" to believe that an applicant for a license has violated any of the specified statutes, or that an applicant is ineligible to contract with, or to receive a license or other form of authorization to import defense articles from any agency of the Government.  See 22 U.S.C. § 2778(g)(3).  Moreover, even where the AECA forbids the President from issuing a license to export to a person, it expressly provides to the President the authority to determine, in his discretion, and in consultation with the Secretary of the Treasury, that a license may issue.  Id. § 2778(g)(4)(B).  As one final example of the decision being

8

committed to agency discretion by law, Congress expressly authorized the Secretary of State to revoke, suspend or amend export licenses without prior notice "whenever the Secretary *deems* such action to be *advisable*."  22 U.S.C. § 2791(e)(2)(A) ("Each export license issued under section 2778 of this title shall provide that such license may be revoked, suspended, or amended by the Secretary of State, without prior notice, whenever the Secretary deems such action to be advisable.").[7]

Courts have consistently held that statutes committing an action to the discretion of the agency provide no justiciable standards by which a court may review the agency's decision and, therefore, a Court may not review actions taken pursuant to those statutes.  Webster v. Doe, 486 U.S. 486, 599-600 (1988) (statute authorizing the Director of the CIA to terminate employee whenever he "shall deem such termination necessary or advisable in the interests of the United States" "fairly exudes deference" and, thereby, precludes judicial review under the APA); Heckler v. Chaney, 470 U.S. 821 (1985); Citizens to Protect Overton Park, Inc. v. Volpe, 401 U.S. 402 (1971); Zhu v. Gonzales, 411 F.3d 292, 295 (D.C. Cir. 2005) (when the statute states that the Attorney General "may" waive a requirement in the "national interest," such a decision calls upon his "expertise and judgment unfettered by any statutory standard whatsoever").  Given

---

[7] In furtherance of the broad authorities in Sections 38(a)(1) and 38(b)(2) of the AECA to adopt regulations to control exports and export licensing, Section 126.7(a) of the ITAR provides broad authority to deny licenses, including whenever the Department of State "deems such action . . . advisable," as well as more specific grounds (e.g., where an applicant or person who may benefit from the proposed transaction is indicted for certain offenses or believed to have violated the AECA or ITAR).

9

that the decision to issue a license to export defense articles is committed to the discretion of the

agency, this Court lacks jurisdiction over plaintiff's APA claims.[8]

IV.    **THE STATE DEPARTMENT MAY NOT BE ESTOPPED FROM INVESTIGATING AND CHARGING US ORDNANCE RELATING TO DEBORD SR.'S EMPLOYMENT AND US ORDNANCE'S FAILURE TO COMPLY WITH ITS REPORTING OBLIGATIONS**

Plaintiff's opposition suggests that the State Department can be estopped from

investigating Debord Sr.'s association with US Ordnance and charging US Ordnance for

violating its reporting obligations to the State Department relating to that association. Nothing

could be further from the truth.

Plaintiff posits that Debord Sr.'s employment with US Ordnance was approved by the

prosecutor in the criminal prosecution of Debord Sr., by the Pretrial Services Section of the

United States Probation Office in San Francisco and Reno, Nevada, and by the United States

District Court for the Northern District of California. See Opp. at pp. 4-5. Regardless of any

*approval* by these entities, plaintiff does not assert that these entities informed US Ordnance that

it did not have to *report* the association, nor could plaintiff assert such a thing. The reason is

simply, the AECA and the ITAR provide none of these entities any obligation or responsibility

for issuing licenses to export defense articles. Moreover, under the ITAR, plaintiff's reporting

obligations were directed to the State Department, not any of the listed entities. The State

Department *never* condoned Debord Sr.'s employment or association with US Ordnance. In

fact, as soon as the State Department learned that Debord Sr. was associated with US Ordnance

---

[8]  The fact that the decision at issue is committed to the discretion of the President and his delegate by law is dispositive of the arguments contained in sections II, III and IV of plaintiff's opposition.

10

while under indictment for allegedly violating the AECA, it immediately began investigating the association and requesting information from plaintiff, followed soon thereafter by the license actions that are the subject of plaintiff's complaint.[9]  Thus, the State Department never gave plaintiff any reason to believe that Debord Sr.'s association with US Ordnance was acceptable under the ITAR.  In fact, every indication plaintiff received from the State Department was to the contrary.

## <u>CONCLUSION</u>

For the foregoing reasons, as well as those set forth in defendants' motion to dismiss, this Court lacks jurisdiction to hear plaintiff's APA claims and, therefore, plaintiff's claims should be dismissed in their entirety.

---

[9]    Other violations that do not relate solely to the association between Debord Sr. and US Ordnance were also discovered in the State Department's investigation.  These separate and distinct violations may be included in the charges to be brought against US Ordnance in the forthcoming administrative action by the State Department.  Plaintiff's opposition seemingly acknowledges its violations, albeit by characterizing them as "benign technical regulatory infractions."  <u>See</u> Opp. at p.3.  While plaintiff may consider violations of the ITAR to be "benign," it is not plaintiff's view of the law, and its violation, that controls whether or not the State Department files an administrative action against it for such infractions.

April 6, 2006                                    Respectfully submitted,


_____/s/_____
KENNETH L. WAINSTEIN, DC BAR #451058
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, DC BAR #434122
Assistant United States Attorney


_____/s/_____
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney
555 Fourth Street, N.W. - Civil Division
Washington, D.C.  20530
(202) 307-1249
(202) 514-8780 (facsimile)