UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| U.S. ORDNANCE, INC., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 05-2304 (ESH) |
| U.S. DEPARTMENT OF STATE, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff U.S. Ordnance, Inc. ("USO" or "plaintiff") asks the Court to direct the Department of State (the "Department") and its employees to issue plaintiff a license to export M16 machine guns to foreign countries. In response, defendants have filed a motion to dismiss wherein they argue that the Court lacks subject matter jurisdiction to hear plaintiff's claims. The Court agrees and will therefore grant defendants' motion and dismiss plaintiff's complaint.

## BACKGROUND

Plaintiff is a manufacturer and exporter of defense articles. Defendants are the Department and John Hillen, Assistant Secretary of State for Political and Military Affairs; Rose M. Likens, Deputy Secretary (formerly Acting Assistant Secretary of State for Political and Military Affairs); and David M. Trimble, Director of the Office of Defense Trade Controls. In February 2000 plaintiff registered with the Department as a manufacturer and exporter of defense articles pursuant to the Arms Export Control Act ("AECA"), 22 U.S.C. § 2751 *et seq*. From that time until May 2004, plaintiff engaged in the business of manufacturing and exporting defense articles to foreign countries. In May 2004, however, the Department learned that plaintiff

allegedly was associated with an individual named Curtis Lynn Debord ("Debord Sr."),[1] who had been indicted in 1997 for violations of § 2778 of the AECA, and therefore was considered as being ineligible to engage in the export of arms under the AECA's implementing regulations – International Traffic in Arms Regulations ("ITAR").[2] *See United States v. Debord*, No. 97-CR-239 (N.D. Cal.) (charging Debord Senior with smuggling arms into the United States, dealing in firearms without a license, entry by false statements, conspiracy, making false statements and witness tampering).[3]

The Department immediately initiated an administrative investigation into Debord Senior's association with plaintiff. By letters dated June 2, June 24, and July 9, 2004, the Department requested information regarding Debord Senior's activities and interest in USO. (Defs.' Exs. 1, 4, 5.) On June 2, 2004, the Department also informed plaintiff that pending the conclusion of the Department's investigation, plaintiff's license applications "would be

---

[1] Debord Senior is the father of Curtis Lee Debord, who is the President, Treasurer, Secretary and sole director and owner of USO.

[2] The ITAR is found at 22 C.F.R. §§ 120-130. A person indicted for violating the AECA is generally ineligible pursuant to § 120.1(c) of the ITAR. *See* 22 C.F.R. § 120.1(c). As provided by § 127.1(c), an ineligible person may not obtain any benefit or have any direct or indirect interest in the export of defense articles without disclosure to and approval of the Department's Directorate of Defense Trade Controls ("DDTC"). *See id.* § 127.1(c). Also, §§ 122.2(b), 122.4(a) and 126.13(a) require that the ineligible status of a senior official of a manufacturer or exporter of defense articles be disclosed in its registration submission and any application for an export license. *See id.* §§ 122.2(b), 122.4(a) and 126.13(a). Finally, under § 126.7(a), the Department applies a policy of denial with respect to any application in which an ineligible person is involved. *Id.* § 126.7(a); *see also* 22 U.S.C. § 2778(g)(3)(B) (authorizing denial if there is reasonable cause to believe that the applicant for a license has violated the AECA, including its implementing regulations).

[3] In June 2005, the United States District Court for the Northern District of California dismissed the indictment, but as argued by defendant, their subsequent dismissal neither changed nor excused plaintiff's reporting obligations. (*See* Defs.' Mem. at 3 n.4.)

processed only as transaction exemptions that must be supported by a request meeting strict national security, foreign policy and law enforcement criteria." (Defs.' Mem. at 4; *see also* Defs.' Ex. 1.) According to the Department, "[a]pplication of such license review criteria in effect imposed a policy of denial for plaintiff's export license applications under the ITAR." (Defs.' Mem. at 4.) Furthermore, on June 24, 2004, the Department suspended the licenses it previously had issued to plaintiff. (*See* Defs.' Ex. 4.) At the time of the Department's June 2 and June 24 actions, plaintiff had seven pending license applications. Three of those applications were the subject of transaction exemption requests (which were denied in October 2004), and the other four applications were returned without action because no transaction exemption requests had been submitted. In addition, the Department suspended thirty licenses that it previously had issued to plaintiff.

From June 2004 through April 2005, the Department reviewed information submitted by plaintiff in response to its requests.[4] On April 4, 2005, the Department issued plaintiff a draft charging letter pursuant to § 128.11(b) of the ITAR, which permits the settlement of administrative enforcement actions prior to the issuance of a formal charging letter. (*See* Defs.' Ex. 7.) On October 26, 2005, the Department issued plaintiff another proposed charging letter that alleged 35 violations of the AECA. (Defs. Ex. 10.)

Instead of responding to the Department's October 26, 2005 proposed charging letter,

---

[4] According to the Department, plaintiff's responses demonstrate, among other things, "that USO had submitted applications for licenses that may have failed to disclose, as required by the ITAR, that an ineligible person, Debord Sr., served as a senior official from July 2000 to June 2004, had a direct or indirect interest in the transactions, and obtained benefits therefrom by earning over $1 million in salary and bonuses that appeared to be attributable in large part to USO's export of defense articles." (Defs.' Mem. at 4; *see also* Defs.' Exs. 2, 3.)

plaintiff initiated this lawsuit on November 29, 2005, seeking an order requiring the Department to process all of its pending license applications and declaring that plaintiff is in full compliance with the ITAR.  (*See* Compl. ¶¶ 5, 6.)  By letter dated February 3, 2006, plaintiff formally responded to the Department's October 26, 2005 proposed charging letter by asserting that the charges set forth therein are without merit.  (Defs.' Ex. 13.)  After reviewing plaintiff's letter, the Department, through the DDTC, began "preparations for the process to formally charge USO with violations of AECA and ITAR in an administrative proceeding under Part 128 of the ITAR," which provides for debarment as a penalty for violations of the AECA and the ITAR following a formal administrative proceeding.  *See* 22 C.F.R. § 128.1.  (Defs.' Mem. at 9.)  The Department also, on March 10, 2006, formally denied all of plaintiff's pending license applications.  (Defs.' Ex. 14.)

## ANALYSIS

I.     **Plaintiff's Request for Injunctive Relief**

Because the Department has now formally denied all of plaintiff's pending license applications, plaintiff's request that the Court order the Department to process these applications has been rendered moot.  *See Columbian Rope Co. v. West*, 142 F.3d 1313, 1316 (D.C. Cir. 1998) ("[e]ven where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal Court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.")*; Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86  (D.C. Cir. 1986) (claims challenging the individual denials of fee waiver requests were moot where the agency had ultimately waived the fees in question); *Barabski v. Buckles*, No. 02-0073 (HHK)

(D.D.C., Oct. 31, 2002) (dismissing as moot plaintiff's request for an order requiring Treasury Department to process his applications to import firearms once Treasury has denied the applications).

## II.    Plaintiff's Request for Declaratory Judgment

### A.    The Department's Denial of Plaintiff's License Applications

To the extent that plaintiff asks this Court to review the Department's denial of plaintiff's license applications under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, this Court has no jurisdiction to do so because the Department's actions fall within its discretionary authority.

Plaintiff claims that jurisdiction is proper under 5 U.S.C. § 706(2), which provides that a reviewing court shall "hold unlawful and set aside agency action . . . found to be (A) arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law (B) contrary to constitutional right . . . (D) without observance of procedure required by law."  5 U.S.C. § 706(2)(A), (B), and (D).  Plaintiff argues that because the Department's charges regarding its alleged violations of the ITAR are without merit, the Department has no basis for its denial of plaintiff's license applications.  Further, according to plaintiff, the ITAR provide justiciable standards for the Court to conduct its review.

Defendants rely on 5 U.S.C. § 701(a)(2), which provides that an action, deriving from discretionary authority committed to an agency by law, falls outside the court's jurisdiction and is therefore not subject to judicial review under the APA.  Defendants argue that the authority to grant or deny a license for export of defense articles has been committed to the Department's discretion, and therefore, the Department's denial of plaintiff's license applications is

5

unreviewable.

Whether an agency action is committed to the discretion of an agency depends on the nature of the delegation of authority and the statutory language. *See Webster v. Doe*, 486 U.S. 592, 599-600 (1988). This narrow exception to judicial reviewability is especially prevalent in cases involving agency decisions relating to foreign affairs and national security, for, as recognized by the D.C. Circuit, these cases involve "judgments on questions of foreign policy and the national interest" that are not "fit for judicial involvement." *See Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n v. Mar. Admin.,* 215 F.3d 37, 42 (D.C. Cir. 2000); *see also Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*, 104 F.3d 1349, 1353 (D.C. Cir. 1997) ("By long-standing tradition, courts have been wary of second-guessing executive branch decisions involving complicated foreign policy matters.").

Moreover, where the language of a statute provides no justiciable standard by which a court can review the agency's exercise of its delegated authority, the matter is treated as committed to the agency's discretion. *See Webster*, 486 U.S. at 600 (a statute allowing the Director of the CIA to terminate employment of any employee whenever he found termination "advisable" for the national interest "fairly exude[d] deference" and thereby precluded judicial review under the APA). In particular, if the statute uses language that permits an executive official, such as the President or another agency official, to take action that the official "deems" in the "national interest," these statutes have been consistently interpreted to preclude judicial review under the APA. *See Zhu v. Gonzales,* 411 F.3d 292, 295 (D.C. Cir. 2005) (construing a statute, which allows the Attorney General to waive a requirement if waiver is in the "national interest," as being committed to the discretion of the Attorney General).

6

In this case, the AECA's delegation of authority to control arms exports is decidedly one involving foreign affairs and national security. As the Court of Appeals for the Federal Circuit has stated, "the broad statutory delegation in the AECA incorporates the 'historical authority of the President in the fields of foreign commerce." *B-West Imports, Inc. v. United States,* 75 F.3d 633, 636 (Fed. Cir. 1996) (addressing authorization to the President to control arms imports under the AECA). Specifically, the AECA provides that the President, or his delegate, may approve the exportation of defense articles when he determines that such action is "consistent with the foreign policy interests of the United States," 22 U.S.C. § 2751, and "in furtherance of world peace and the security and foreign policy of the United States." *Id.* § 2778(a)(1). Congress has also authorized the Secretary of State to "revoke[], suspend[], or amend[]" an export license "without prior notice, whenever the Secretary deems such action to be advisable." *Id.* § 2791(2)(A). Such express statutory language "fairly exudes deference" to the executive branch, and therefore, precludes judicial review under the APA. *Webster*, 486 U.S. at 600.

Accordingly, given the clear statutory language and the absence of judicially manageable standards to guide the Court's review, it must reject plaintiff's invocation of the APA and decline to review the agency's denial of plaintiff's applications for licenses to export M16 machine guns.

In response to this seemingly insurmountable hurdle, plaintiff attempts to raise a series of arguments, none of which has merit. First, plaintiff claims that the Court has jurisdiction because "the core of the complaint is the deprivation of plaintiff's Due Process Rights guaranteed by the Fifth Amendment." (Pl.'s Opp. at 1.) This claim, however, is noticeably absent from plaintiff's complaint and from its motion for preliminary injunction, but more importantly, it is contrary to well established precedent. Courts have consistently held that a party has no property interests in

foreign commerce. *See e.g. The Vessel Abby Dodge v. United States*, 223 U.S. 166, 176-77 (1912) ("[N]o one can be said to have a vested right to carry on foreign commerce with the United States."); *B-West Imports*, 75 F.2d at 638 (government may prevent the import of firearms under the AECA without being subject to a Due Process claim); *Continental Seafoods, Inc. v. Schweiker*, 674 F.2d 38, 42 n.11 (D.C. Cir. 1982) ("Courts must defer to the expertise of the agency charged with exercising Congress' broad power to bar articles from import."). In particular, plaintiff's brief completely ignores the case of *B-West Imports*, where the Federal Circuit explicitly held that there is no protected property right in the importation of defense articles. *B-West Imports*, 75 F.3d at 638. Congress has the constitutional authority to restrict sales of arms to foreign nations, and it has exercised this authority through the AECA. *See id.* Since the AECA controls both imports and exports, the *B-West* analysis applies to this case even though the issue here involves exports rather than imports of defense articles.[5]

Second, plaintiff attempts to establish jurisdiction by conflating license denial decisions with a debarment determination by characterizing defendants' "policy of denial" as a "*de facto* debarment." (Pl.'s Opp. at 1.) Debarment, which can only be imposed after a formal administrative proceeding, would permanently deprive plaintiff of any chance to obtain a license under the AECA. *See* 22 C.F.R. § 127.7. Whereas, a decision to deny an export license is not an enforcement action, but rather is an exercise of the broad discretionary granted to the Department. *See id.* at § 126.7(a). Thus, a denial of a license is only a preliminary action, and if

---

[5] Moreover, plaintiff's reliance on *Kartseva v. Department of State*, 37 F.3d 1524 (D.C. Cir. 1994), is misplaced. (Pl.'s Opp. at 7.) First, *Kartseva* related to employment, rather than to a business's interest in exporting weapons. Second, and more importantly, the posture of *Kartseva* was different than it is here, for the plaintiff in *Kartseva* experienced a change in legal status, but as explained herein, plaintiff's legal status has not yet been determined.

a subsequent enforcement action is undertaken, only that action is subject to the procedures of Part 128 of the ITAR. *See id.* at §§ 127.7, 128.

Given the fact that the pending enforcement proceeding has not yet been concluded, plaintiff cannot cure the Court's lack of jurisdiction, since any request at this time for review of the Department's actions would be premature. Under the APA, a court may only exercise judicial review over a "final" agency action "for which there is no other adequate remedy in a court," 5 U.S.C. § 704, and an agency action is only final "to the extent that it imposes an obligation, denies a right or fixes some legal relationship." *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Com'n*, 324 F.3d. 726, 731 (D.C. Cir. 2003). Since plaintiff's legal status has yet to be determined, the Department's action cannot be reviewed under the APA.

For this reason as well, plaintiff's final argument that it is entitled to declaratory judgment because it has complied with the ITAR must fail. As previously explained, the determination of whether a party is in compliance with the ITAR has been committed to the discretion of the Executive Branch under the AECA, and a court is without authority to thereby trespass into this terrain. *See Peoples v. U.S. Dept. of Agric.*, 427 F.2d 561, 565 n.9 (D.C. Cir. 1970) ("Of course any lawsuit challenging the validity of an administrative or executive action, whether the relief sought is mandamus, injunction, mandatory injunction or declaratory judgment, is limited by the supervening doctrine that a court cannot by its order trespass into the domain of discretion entrusted by the legislature to the official or agency involved."). At this stage, the Court is without jurisdiction to address the merits of the agency's proposed actions, and thus, it has no power to issue a declaratory judgment.

**CONCLUSION**

For the foregoing reasons, the Court will **GRANT** defendants' motion to dismiss [#19] and will **DISMISS** the above-captioned complaint, based on a lack of jurisdiction.

          /s/          
ELLEN SEGAL HUVELLE
United States District Judge

Date:  June 5, 2006